Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1993 | **DATE** | 10/25/2004 |
| **CASE TITLE** | Q Sales & Leasing, LLC vs. Quilt Protection, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendants' motion in limine to bar plaintiff's claim for lost profits [60-1] and defendants' motion in limine to exclude the testimony of Stephen Pawlow [61-1] are entered and continued. Defendants' motion in limine to bar testimony regarding alleged "handshake agreement" [62-1] is granted. Defendants' motion in limine to bar plaintiff's use of the term "knockoff" [63-1] is granted in part and denied in part. Plaintiff's motion in limine to bar defendants from asserting any defense to plaintiff's trademark rights [64-1] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | **2** number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 2 6 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 82 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/25/2004 date mailed notice | |
| hmb | courtroom deputy's initials | | hmb mailing deputy initials | |

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 2 6 2004

Q SALES & LEASING, LLC, )
)
    Plaintiff, )
)
    vs. ) Case No. 01 C 1993
) Magistrate Judge Nan R. Nolan
QUILT PROTECTION, INC. and )
ROBERT GRADY )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Q Sales & Leasing LLC ("Q Sales") brings this suit against defendants Quilt Protection, Inc. ("QPI") and Robert Grady alleging a violation of Section 43(a) of the Lanham Act, a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, common law unfair competition, and conversion. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on March 1, 2005. The parties filed five motions in limine. The Court addresses each motion in limine in turn.

1.     <u>Plaintiff's Claim for Lost Profits</u>

Defendants move to bar Q Sales' claim for lost profits under the new business rule and because it is speculative. Defendants' motion is entered and continued.

Defendants points out in their Reply brief that Q Sales failed to include its lost profits as a measure of damages in its Itemized Statement of Special Damages in the Final Pretrial Order. Q Sales has not sought to amend the Final Pretrial Order. Given this omission, it is unclear whether Q Sales intends to seek as damages its lost profits. Accordingly, Q Sales is directed to file a pleading by November 11, 2004 addressing whether it intends to pursue at trial damages suffered by Q Sales

82

as lost profits and if so, explain its omission of this category of damages from the Final Pretrial Order.

2.  Testimony of Stephen Pawlow

Defendants' second motion in limine argues that the expert testimony of Stephen Pawlow, a certified public accountant, should be excluded because his testimony regarding QPI's profits fails to meet the standard for admissibility of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. Ltd. v. Carmichael 526 U.S. 137 (1999). This motion is also entered and continued.

Federal Rule of Evidence 702 allows the use of expert testimony, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The Supreme Court has held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The trial court is obligated to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. Q Sales bears the burden of establishing the admissibility of Pawlow's proposed expert testimony. Bradley v. Brown, 852 F. Supp. 690, 697 (N.D. Ind.), aff'd, 42 F.3d 434 (7th Cir. 1994).

Q Sales seeks to recover QPI's profits under 15 U.S.C. §1117(a). The Lanham Act provides that Q Sales is entitled to recover, subject to equitable principles, the profits earned by QPI from

sales of its infringing blankets. Q Sales bears the burden of proving QPI's gross sales of products bearing the infringing marks with reasonable certainty. See 15 U.S.C. § 1117(a) (stating "in assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 712 (9th Cir. 1999) (noting that it is plaintiff's burden to show with reasonable certainty defendant's gross sales from infringing activity).

QPI challenges Pawlow's methodology in calculating QPI's profits. QPI argues that Pawlow's opinion is not reliable because Pawlow has not distinguished between infringing and non-infringing revenues. QPI points out that Pawlow did not exclude foil revenues for the period 1995-2000 and the revenues that QPI received from the rental of the blankets it had acquired from Q Sales and Unicargo. QPI states that Pawlow explained in his deposition that he did not exclude these revenues from his calculation of QPI's profits from sales of its infringing blankets because those amounts were not set forth separately on QPI's financial statements. QPI complains that Pawlow made no effort to determine the non-infringing revenues from any other source of information, such as the underlying financial information.

Q Sales responds that "[d]ue to the paucity of information provided by defendants in their financial statements, it was impossible for Pawlow to distinguish between what was and was not infringing." Q Sales' Resp., pp. 1-2. Pawlow relied on the compiled income statements for QPI for the years ended December 31, 1995 to December 31, 2003. Where non-infringing revenues were identified in the income statements, like foil blankets, Pawlow did not include them in his damage calculations.

-3-

"While the burden is on the plaintiff to prove the defendant's gross sales, a plaintiff relies on the defendant's discovery responses to produce reliable evidence of those sales." Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd., 2000 WL 1745078, at * 1 (D. N.H. Oct. 19, 2000), aff'd, 282 F.3d 23(1st Cir. 2002). Court have recognized that if the defendant "controls the most satisfactory evidence of sales" and refuses to make such evidence available to the plaintiff or fails to keep adequate records, the plaintiff "needs only establish a basis for a reasoned conclusion" concerning the amount of sales. Id. (quoting Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985)); see also Deering, Milliken & Co., Inc. v. Gilbert, 269 F.2d 191, 193 (2d Cir. 1959) (stating defendant's "failure and refusal to produce the most satisfactory evidence of sales–or absence of sales–leave his cause exposed to indirect and less definite and certain methods of proof"). Moreover, "[i]f the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary evidence." Aris Isotoner Inc. v. Dong Jim Trading Co. Inc., 1989 WL 236526 at *5 (S.D. N.Y. 1989).

The current record is unclear regarding what efforts, if any, Q Sales, made during discovery to obtain evidence from which revenues from infringing and non-infringing products could be determined. Q Sales is directed to file a pleading addressing its efforts to obtain evidence of sales from infringing and non-infringing products by November 11, 2004. Q Sales is further directed to address whether the issue of defendant's profits is a question for the Court or the jury. QPI shall respond by November 18, 2004. The Court reserves ruling on defendants' motion in limine.

3.  <u>Alleged "Handshake" Agreement</u>

Defendants next move to bar Q Sales from offering testimony as to the "handshake" agreement made by Robert Haberkorn of Q Sales with defendant Robert Grady and QPI to purchase blankets from Unicargo (the predecessor of Q Sales) in perpetuity as both irrelevant and prejudicial. QPI's motion is granted.

During discovery in this case, Robert Haberkorn asserted that in early 1993, he made a "handshake" agreement with Robert Grady and QPI under which QPI was obligated to purchase blankets from Unicargo in perpetuity. Defendants deny any such agreement. Defendants argue that this evidence is irrelevant and prejudicial because Q Sales has not asserted a breach of contract claim and the alleged agreement would violate the Statute of Frauds.

Q Sales responds that "the fact that Grady reneged on his word is relevant and goes directly to Grady's credibility." Q Sales' Resp. at 1. Q Sales contends that this evidence is admissible under Federal Rule of Evidence 608(b). Under Rule 608(b), "a witness's specific instances of conduct may only be raised on cross-examination if they are probative of truthfulness or untruthfulness." <u>United States v. Manske</u> 186 F.3d 770, 774 (7th Cir. 1999). Some specific instances of conduct, such as acts involving fraud or deceit, clearly cast doubt on a witness's truthfulness or untruthfulness. <u>Varhol v. National R.R. Passenger Corp.</u> 909 F.2d 1557, 1567 (7th Cir. 1990). In contrast, other acts, such as "murder, assault, or battery," do not normally relate to a witnesses's reliability for telling the truth. <u>Id</u>.

Here, Q Sales has not cited and the Court has not found any authority supporting its contention that an alleged breach of contract is probative of defendant Robert Grady's truthfulness. Moreover, Q Sales has not come forward with any facts suggesting that Grady had any deceptive

intent in allegedly breaching the handshake agreement. United States v. Miles, 207 F.3d 988, 994 (7th Cir. 2000) (upholding district court's decision to prohibit cross-examination of witness about his failure to register his gun with the City of Chicago pursuant to a local ordinance because the failure to register a gun does not necessarily implicate fraud, deceit, or dishonesty and nothing in the record indicated that the witness had deceptive intent). Thus, evidence about defendant Grady's breach of an alleged handshake agreement is not admissible to prove Grady is not worthy of belief.

Q Sales further argues that the handshake agreement and Grady's alleged failure to comply with the agreement is necessary to overcome QPI's laches defense. The defense of laches is an affirmative defense which a party is required to "set forth affirmatively." See Fed. R. Civ. P. 8(c). Laches is not properly raised as an affirmative defense in defendants' Answer to First Amended Complaint for Injunction and Other Relief. Thus, the defense of laches is not at issue here.

4.   Use of the term "Knockoff"

Defendants move to bar Q Sales from using the term "knockoff" to refer to blankets purchased by QPI from suppliers other than Q Sales. Defendants contend that the characterization of these blankets as "knockoffs" is irrelevant and prejudicial. Defendants' motion is granted in part and denied in part.

Q Sales seeks relief based on, among other things, a theory of false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). Section 43(a) creates a cause of action for "any person who believes that he or she is or is likely to be damaged" by a defendant's false designation of origin that is likely to cause confusion as to origin. Q Sales intends to show at trial that the false designation of origin occurred when customers contacted QPI for "Cargo Quilt" insulated freight blankets and QPI provided lower quality and cheaper look-alike blankets

manufactured by MIAM Co. or other suppliers of QPI which confused consumers about the origin of the blankets. Q Sales describes these insulated freight blankets purchased by QPI from sources other than Q Sales as "knockoffs."

QPI contends that Q Sales' characterization of these blankets as "knock-offs" is intended to be pejorative. Q Sales' Response does not attempt to justify its witnesses' use of the pejorative label "knockoffs" other than to state in a conclusory sentence that Q Sales would be unduly prejudiced if prevented from referring to QPI's blankets as "knockoffs." The term "knockoff" is not relevant and its use is likely to be prejudicial. Q Sales' witnesses may testify as to what they observed regarding the appearance of the QPI blankets purchased from other sources and may describe the QPI rental blankets from other sources in a non-pejorative fashion. QPI's motion is granted to the extent it seeks to bar Q Sales' use of the term "knockoff" to describe QPI products.

Defendants also argue that absent trade dress infringement and patent claims, evidence that QPI purchased blankets that were similar in appearance to Q Sales blankets is irrelevant because "it is perfectly proper to make or sell a product that has a similar appearance to another's product." Defs' Reply at 1. Whether the rental blankets that QPI purchased from sources other than Q Sales were similar in appearance to Q Sales' blankets is relevant to Q Sales' false designation of origin claim. A claim of false designation of origin requires a showing that Q Sales has a protectable trademark and a likelihood of confusion exists as to the origin of QPI's rental blankets. Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1084 (7th Cir. 1988). In determining whether a likelihood of confusion exists, several factors, including the similarity of the products, is important. Id. at 1087. Defendants' motion is thus denied to the extent it seeks to bar Q Sales from presenting evidence of the similarities in appearance between Q Sales blankets and the other QPI

rental blankets for the purpose of showing that QPI used the allegedly inferior look-alike blankets to cause confusion in the marketplace as to origin.

5.      Defenses Other Than Those Allowed By 15 U.S.C. § 1115(b)

Q Sales moves to bar defendants from asserting any defenses to Q Sales' trademark rights other than those allowed by 15 U.S.C. § 1115(b). Q Sales argues that only the defenses enumerated in 15 U.S.C. § 1115(b) can apply against incontestable marks. Q Sales' motion is denied as moot because the only defense to validity defendants' Response indicates they intend to raise is genericness and it is undisputed that a mark's incontestable status does not prohibit a challenge of genericness.

Q Sales states that the Cargo Quilt mark is incontestable under 15 U.S.C § 1065. "Incontestability is 'conclusive evidence of the validity of the registered mark and . . . the registrant's exclusive right' to use the mark in commerce." Eco Manufacturing LLC v. Honeywell International Inc., 357 F.3d 649, 651 (7th Cir. 2004); 15 U.S.C. § 1115(b). Defendants do not dispute that if Q Sales establishes the Cargo Quilt mark's incontestability, certain limitations on defenses involving the validity of the trademark attach. Defendants intend, however, to contest the validity of the Cargo Quilt mark on the grounds that it is generic. "A generic term is one that is commonly used as the name of a kind of goods." Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 936 (7th Cir. 1986). Generic terms cannot be registered, and an incontestable mark that becomes generic may be canceled at any time. Park 'N Fly, Inc. v. Dollar Park and Fly, Inc. 469 U.S. 189, 193-194 (1984). Q Sales' Reply correctly recognizes that defendants may challenge the "Cargo Quilt" mark on the grounds that it is generic. Te-Ta-Ma Truth Foundation v. World Church of the Creator, 297 F.3d 662, 665 (7th Cir. 2002) (noting that the generic nature of an incontestable mark may be a defense

-8-

in litigation); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:149 (4th ed. 2004) (stating that "[i]t is important to note that while genericness is not on the § 33(b) list, Lanham Act § 15(4) specifically mandates that no incontestable right shall be acquired in a generic name.").

Q Sales' Reply also states that "defendants cannot avail themselves of any defense that states that Q Sales 'Cargo Quilt' is merely descriptive, or any defense that has to do with the strength of the mark." Q Sales' Reply at 1. Q Sales is correct that the validity of an incontestable mark cannot be challenged on the basis that it is merely descriptive. Park 'N Fly, 469 U.S. at 196.[1] However, the strength of the Cargo Quilt mark is another issue. The likelihood of confusion analysis includes a strength of the mark component, and defendants may question the strength of the "Cargo Quilt" mark in the context of the likelihood of confusion analysis. Munters v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) (holding that Park 'N Fly does not preclude consideration of an incontestable mark's strength for purposes of determining the likelihood of confusion).

One final point merits mention. Q Sales' Reply suggests that the Court should resolve the issue of whether "Cargo Quilt" mark is generic prior to trial. Q Sales' suggestion amounts to an untimely request for summary judgment. The Court will not resolve the genericness issue prior to trial. Whether a trademark is generic is a question of fact which may be resolved on summary judgment if "the evidence is so one-sided that there can be no doubt about how the question can be

---

[1] Although defendants' Response to Q Sales' motion in limine does not indicate that defendants intend to challenge the validity of the mark on the basis that it is merely descriptive, their trial brief states that Q Sales' mark is descriptive and that Q Sales cannot establish that the Cargo Quilt trademark has acquired secondary meaning. If Q Sales shows incontestability, it need not establish secondary meaning. Incontestability means that the mark "may be enforced without proof of secondary meaning, even if it is a descriptive name for qualities or characteristics of a good or service." Te-Ta-Ma Truth Found., 297 F.3d at 664.

answered." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300-01 (7th Cir. 1998). Q Sales could have filed a motion for summary judgment on the issue of genericness but failed to do so. Q Sales may file a motion under Fed. R. Civ. P. 50 at the close of defendants' case.

### CONCLUSION

For the reasons explained above, Defendants' Motion in Limine to Bar Plaintiff's Claim for Lost Profits [60-1] is entered and continued; Defendants' Motion in Limine to Exclude the Testimony of Stephen Pawlow [61-1] is entered and continued; Defendants' Motion in Limine to Bar Testimony Regarding Alleged "Handshake Agreement" [62-1] is granted; Defendants' Motion in Limine to Bar Plaintiff's Use of the Term "Knockoff" to Refer to Blankets Purchased by QPI From Sources Other Than Plaintiff [63-1] is granted in part and denied in part; and Plaintiff's Motion in Limine to Bar Defendants From Asserting Any Defense to Plaintiff's Trademark Rights Other Than Those Allowed by 15 U.S.C. § 1115(b) is denied as moot.

E N T E R:

Nan R. Nolan
United States Magistrate Judge

Dated: 10/24/04